Good morning. My name is Colleen Smith. I'm joined at council table by Kimberly Hicks. We are counsel for Appellant Louis Thomas Cervantes. I would like to reserve two minutes in rebuttal. Just watch the clock. I will first briefly address the service of process issue and the District Court's failure to consider Mr. Cervantes' First Amendment and due process claims, and then devote the remainder of my argument to the issue preclusion and discovery questions. First, the District Court abused its discretion by dismissing Count 2 of Mr. Cervantes' claim, his excessive force claim, for failure to affect service of process. Pursuant to 28 U.S.C. 1915d, an incarcerated informed papyrus litigant is entitled to rely on the United States Marshal to serve process. This requirement is absolute. So long as the incarcerated informed papyrus litigant has acted in good faith to affect service of process, he may not be penalized for the United States Marshal's failure to serve process on his behalf. There's no suggestion in this record that Mr. Cervantes failed to act in good faith. In fact, the opposite is true. Mr. Cervantes filed multiple motions, filed motions for judicial summons, seeking to clarify the conflicting holdings of the magistrate judge and the District Court with regard to service of process. Moreover, although Mr. Cervantes was briefly released from prison, he was released from prison for a period of less than two months, during which he had reconstructive surgery on his elbow and was recovering during that time. Well, on the medical claim, doesn't collateral estoppel bar this case? No, Your Honor, for two reasons. First is, issue preclusion does not apply under Arizona law. Issue preclusion does not apply when, because of special circumstances, a litigant has not had a full and fair opportunity to litigate his claim. Such special circumstances exist when the prior proceeding was a limited proceeding in which the litigant could not fully adjudicate the claim that he's seeking to adjudicate in a subsequent action. In this case, the Arizona special action proceedings are just such limited proceedings. But it has to be, in those proceedings, there has to be some factual support. And the court ruled, as I get the picture, that is the Arizona court ruled, that factually he didn't qualify for relief. And in so holding, the words were roughly that the prison had not violated any of his rights nor failed to exercise whatever discretion they had appropriately. And that was based upon whatever factual showing. Now, if he'd have made a factual showing that he was being subjected to Eighth Amendment violation, he'd have won that case, would he not? He may have not gotten the remedy that we're talking about, the damages, but he'd have won. Actually, there's a court of appeal case decided by a court in Arizona, and it's not cited in the brief, but the name of the case is Neri v. France. And I'll provide the site and I'll provide the court with copies of this case. The site is 685 P. 2nd, 1323. In that case, the Arizona court of appeal explained that because the questions that courts can consider in special action proceedings are so limited, and because in special action proceedings, courts cannot examine the substance, the reasons behind the government official's decision-making, that special action proceedings are an inappropriate forum for the adjudication of federal constitutional rights. Thus, in that case, a First Amendment violation was alleged. The trial court sitting in special action never considered the evidence regarding the First Amendment claim, and the court of appeal explained that that was correct. Federal constitutional rights cannot be adjudicated in special action proceedings. But they didn't say that they never could be, did they? I mean, here, it's the exact same thing. I mean, it all has to do with his shoulder or his arm or his elbow or, you know, all of that. And that was the basis in state court, and that's the basis here. The factual underpinnings are obviously the same. However, the special action, the court sitting in special action, couldn't examine whether his Eighth Amendment rights were violated. It couldn't go behind the stated reasons for the government official's conduct. If he had made a showing that his Eighth Amendment rights were violated and were being violated, he'd have been entitled to relief, would he not, under Arizona special proceedings? I think the answer to that actually is no, that special action proceedings are not an appropriate forum for the adjudication of federal constitutional rights. Well, but they're not adjudicating a federal constitutional right, but they're adjudicating some facts. And that court made a determination that there wasn't sufficient evidence to support a showing that the prisoner, the prison personnel had violated the law or any right nor failed to exercise their discretion. Now, that's a factual thing, and we're talking about issue of preclusion rather than res judicata or something like that. Now, why wouldn't he win of necessity if he proved that his Eighth Amendment rights were violated by deliberate indifference? Why isn't that a slam dunk winner? Because the court in special action couldn't decide that issue. It could only examine the three limited mandamus certiorari prohibition. That goes to remedy, but it has to determine some facts in order to get to any remedy, does it not? Yes, Your Honor. How did those facts against this petition? Now, we're not talking about First Amendment rights. We're talking about the deliberate indifference claim. And in Neary v. France, in fact, the Court of Appeal explained that a court sitting in special action can't even consider the evidence that supports the federal constitutional right. The facts that establish that federal constitutional right can only be adjudicated in a full-on action at law enforcement. So what did they say he didn't prove? You know, if he had won there, what would they have said he proved? If he had won on his mandamus actions. Yes. That under Arizona law, he had established that the officials failed to perform a duty that they were required to perform by law. All right. Well, then how can't that just, I mean, how can't that just, therefore, you get to, he didn't establish that they were medically indifferent? Because the special action court cannot decide the constitutional question. In other words, although the special action court did hold that the officials hadn't failed to perform a duty required by law. But you can't keep renaming things if the facts don't go anywhere. And that's, I think that's where you're stuck on that. And if the facts don't go anywhere when Mr. Cervantes' claim goes back to district court, then they don't go anywhere. But he hasn't had a chance to fully adjudicate his federal constitutional rights in the first instance. First, because special, because the special action proceedings are not preclusive of his federal constitutional claim. And then because the district court erred in applying issue preclusion to his case. I see that my time is up. I'd like to reserve the remaining time. You may reserve it. Good morning. My name is Wanda Hoffman. I'm an Arizona assistant attorney general, and I'm here on behalf of the Arizona Department of Corrections folks. And I'm also here with Peter Aknajan, who is representing Dr. Jedsinski.  We will be. All right. Okay. You may proceed. The facts were established in the initial action and the special action, but the Court also ruled on the basis of a constitutional violation that the defendants did not violate Mr. Cervantes' Eighth Amendment rights with regard to his medical claim. I think we kind of discussed that. Let's sort of cut to the chase. I mean, Mr. Cervantes was good at certain things. I mean, he killed a lot of trees in filing all of his paper. But there's a couple areas that I think I'm concerned about. First, why did the district court dismiss his retaliation claim? Is the court's reasoning evident in the record? It seems like that maybe kind of got lost in the shuffle of everything that was going on. And then the other part that I see a weakness is that why should we vacate the dismissal of Cervantes' claim of alleged excessive force against Cardoff and remand for the United States marshal to properly serve? It looks like he did what he was supposed to do, and the marshal just didn't serve. Let me talk about the service issue first. In the scheduling order right up front in Docket Eight, the district court told Mr. Cervantes that he had 120 days or 60 days from the date of the order, or until October 4th of 2004, and that's at ER 42, in which to serve all the defendants. At that point — Is there any question that the marshal's service is the entity which does the service? Well, in this case, Mr. Cervantes was out of DOC at that point. He had been released from prison. What he did on his free time after that was up to him, but he wasn't a pro se prisoner at that point. He was a guy on the street. The court had warned him that he needed to serve or, under Rule 4, the action could be dismissed, 4.2. And he was warned right up front that service was an important thing. But when he was warned of that, was he in custody? No. He was actually — I've got a chart here of when he was in and out of custody, with all his address changes. But I believe he was released — Are you prepared to say that, with respect to the time within which service was required, he never was in custody? He was released from prison on 6-20-04. The order came out, I believe it was 8-4-04. And — Which order? The service order, which is Docket 8. And he was back in DOC custody on 7-1-05, on a new criminal charge. So he committed another crime and then was tried and was returned to the Department of Corrections. He wasn't released on a temporary basis. When he was released in June of 2004, he was out of prison. And after that point, he had surgery and — That's not a direct answer now to the question that was asked of you. He was then back in prison during the portion of the time that was allotted for service, was he not? He was not back in the Department of Corrections. Or was he? He was. I have to check my timeline here. He was in Maricopa County custody part of the time. Right. And then he was back in the Department of Corrections in 2005. And the operative pleading was filed after he went back to jail. Is he right in his reply brief when he points that out, that the operative pleading was the amended complaint, whatever number, that was filed after he went back into prison? This is true. And what, you're claiming that his time for service had gone by the time he filed the amended complaint, and he don't get to file it? Well, my point is that if he — I'm sorry, Your Honor. If he had served Lieutenant Karkoff when he was first released from prison, he could — the second complaint, the amended complaint, could have been served on me as the other defendants who had been served the original complaint were served. He didn't have to reserve the people who were already in the lawsuit. Well, by the time he filed his amended plea, the case had not been dismissed, right? That's true. And it was the operative pleading. And at all times, while that was pending, he was in jail, right? I believe so. The amended complaint was filed on 4-1205. Well, that's pointed out in the reply brief. You don't really challenge anything that's said about the sequences there in the reply brief, or do you? Well, I believe not. I'm trying to remember all the details of the dates on this. Like I say, there are a lot of dates in this case. But my point is that if he had taken this case seriously and when he was released — Well, but that — if he had, if he had done this, there are other ways he could have done it. But the question is, did he legally have to do it that way? And, you know, if he was — if it still could have been served and he was in custody at all times after that occurred, when it could have been done, then that's a problem for you. It could have been better, Your Honor. But I do believe that he did not take the initiative himself, and he could have done that when he was out of prison. And the court had told him right up front that it was necessary to serve the complaint. Well, he could have, yes. But did he have to legally? You know, that's where we have to, you know, where we have to be. The court told him he did or his action may be dismissed under the rules. It was ultimately up to him. If the marshal had sent him the packets and he had not sent them back to the marshal, that would have been a problem for him, and it could have been dismissed on that ground. So he had responsibilities in order to make sure that the marshal followed through. He was told by the United States District Court on two occasions that he'd already served this man. That's true. And he was told on another occasion by the United States District Court that he had not served this man. Now, one or the other of those is right, I presume, and he is in a position of being charged with knowing better than either the magistrate judge or the district judge, or at least one of them. Isn't that the dilemma we're in? Well, that was after he was out of prison. That's true. Now, if you're finished on that subject, I want to go back to the collateral estoppel. We're running out of time. Okay. The concern I have is that the remedy available in the state court would be all forward-looking. It could only be mandamus or some order to do something, correct? Couldn't be damaging. That's true. Now, supposing that this man presented evidence to that tribunal that said, all of this treatment has been delayed, and I suffered pain because it was delayed, but at the very time that that case is pending, there is no cause to issue mandamus because whatever the past is that can't be unraveled, it can only be forward-looking. Now, why would that bar some remedy for the pain that may have been inflicted prior to the time that the Arizona court would be looking at it to determine whether or not it should mandamus somebody or compel somebody to do something in the administrative branch? It is a limited action in that regard. However, Mr. Cervantes chose to use a special action. Well, I know, but he sought remedies that were discreet, but could not compensate for any wrong that was done to him in the past that was not ongoing or threatened. Isn't that the nature of that remedy? The nature is that the court can order the respondent to act. To act, but can't order them to pay. I believe not. Correct. Although if the court ordered the Department of Corrections to give him surgery, they would be expected to pay for it. Well, that would all be forward-looking. The remedies are all forward-looking, are they not? This is true. Okay. Kelsey, did you want to allow your co-counsel to have a few seconds? I did. I'm sorry. Just give me a few minutes here. If I could just make one other point on your kind of being inconsiderate of his time. I was. I was. Good morning. Peter Akinagian for Defendant Rippelli-Jabrzinski. Your Honor, you had asked a question about the retaliation claim and how that was covered in the court's order. I think I read footnote four of the order at page 16 of the order, and it pointed out that in the special action there was also a claim of retaliation. I agree it wasn't the clearest thing in the world, but I thought that at least implicitly the court was saying that the retaliation claim was also something that had been made in the special action. My main point wanted to be that what I wanted to make was whatever you decide to do here, I think you should affirm the judgment as to Defendant Jabrzinski. Dr. Jabrzinski saw the prisoner on one occasion. This is the indifference claim? Yes, sir. Dr. Jabrzinski saw Mr. Cervantes on one occasion on May 1, 2003. There is a medical record of that date. Dr. Jabrzinski took a history. He conducted a physical examination. He interpreted the x-rays. He made a diagnosis, and he made a recommendation. And there was criticism of his recommendation, and that's a debatable point, I would admit. But it does not arise to the level of deliberate indifference, and I think the Court's rationale at pages 17 through 19 of its order cited the correct case law. Thank you, counsel. Your time has expired. Thank you, Your Honor. I'd just like to make two points in rebuttal. The first is that Mr. Cervantes was, if not in Arizona Department of Corrections custody, he was in custody in prison during the relevant times that service of process should have been effected. The District Court's August 3rd order, in fact, requests that Mr. Cervantes submit a service packet so that he could use the United States Marshal to effect service. The District Court at all times recognized that as an incarcerated informed papyrus litigant, Mr. Cervantes should rely on the United States Marshal. Second, with regard to the First Amendment retaliation claim, the District Court did acknowledge that portions of his complaint referred to the First Amendment, suggested that the defendants were chilling his First Amendment activities, but never actually considered whether the allegations of his complaint stated a claim for relief. In reviewing those claims, they clearly do. Taking those allegations as true as the District Court and as this Court must, his complaint does state a claim for First Amendment relief. Thank you, counsel. The case just argued will be submitted for decision, and we will hear argument next. Yes, the Court would like to thank counsel for appearing pro bono and pro prayer for this very fine presentation. Thank you.
judges: O'scannlain, Levy , Callahan